372 July 8, 2026 No. 645

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EDI VILLALOBOS, Jr.,
*Defendant-Appellant.*

Washington County Circuit Court
21CR17557, 20CR27638, 23CR09494, 22CR53934;
A183130 (Control), A183125, A183126, A183127

Eric Butterfield, Judge.

Submitted April 23, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Matthew Blythe, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Joanna Hershey, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

In this consolidated criminal appeal, defendant appeals judgments of conviction for second-degree murder, ORS 163.115, unlawful use of a weapon, ORS 166.220, first-degree burglary, ORS 164.225, felony fleeing or attempting to elude a police officer, ORS 811.540, reckless driving, ORS 811.140, recklessly endangering another person, ORS 163.195, driving under the influence of intoxicants, ORS 813.010, possession of a weapon by an inmate, ORS 166.275, and escape in the second degree, ORS 162.155. He raises eight assignments of error. For the reasons that follow, we affirm.

*Exclusion of R's Testimony on Relevance Grounds.* Defendant was charged with second-degree murder after stabbing the victim, G, which resulted in G's death. At the time of the stabbing, G—whom the state described during trial as defendant's mother's "long-term boyfriend"—lived in a home with, among others, defendant's mother, defendant's brother, and defendant's four-year-old sister, Y. At defendant's trial, defendant testified that, although he stabbed G, he did so in self-defense.

More specifically, defendant testified that he believed that G was sexually abusing Y; defendant confronted G about the abuse; G attacked defendant with a knife; defendant wrested the knife away from G; and defendant then stabbed G with the knife in an effort to get away.

In support of that defense, defendant attempted to call his other sister, R, to testify that she believed that Y was being sexually abused, albeit by someone other than G. The state represented to the trial court that, even if R did believe that, R had never communicated that belief to defendant, and defendant did not dispute that representation. The trial court excluded R's testimony concerning the alleged sexual abuse of Y on relevance grounds.

On appeal, in defendant's first assignment of error, he contends that the trial court erred "when it excluded testimony from defendant's sister that she suspected Y was being abused." In particular, defendant contends that evidence "that another person in defendant's family

also believed that Y was being abused—regardless of the perpetrator—would have corroborated defendant's testimony that he believed that Y was being abused" and if "the jury believed that defendant was telling the truth about the abuse, then that would have increased the chances that the jury would believe the rest of his testimony."

"Whether evidence is relevant presents a question of law that we review for legal error." *State v. Roberts*, 340 Or App 220, 227, 570 P3d 279 (2025). "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* (quoting OEC 401). "That rule requires a rational relationship between the evidence offered and the substantive issues properly provable in the case." *Id.* (internal quotation marks omitted).

The difficulty with defendant's argument is that R's testimony that *she* believed that Y was being abused by someone other than G—a fact that, for all that appears from the record, R had not communicated to defendant—would not "corroborate" defendant's testimony that he believed that Y was being abused by G. *See, e.g.*, *State v. Easley*, 290 Or App 506, 517, 415 P3d 1099, *rev den*, 363 Or 390 (2018) (evidence that decedent had tried to "poke" a third-party with a pitchfork was not relevant to defendant's self-defense claim, where defendant "offered no evidence that [the third-party] had related the pitchfork incident to defendant, or that defendant otherwise knew about it"). Thus, we conclude the trial court did not err.

*The State's Cross-Examination of Defendant and Closing Argument.* The defendant's second through eighth assignments of error concern the prosecutor's cross-examination of defendant and the prosecutor's closing argument. Defendant addresses those seven assignments of error in a combined argument section. We address them together as well, given the manner in which defendant briefed the legal issues.

As noted, the defense theory was self-defense. In sum, and as relevant to the second through eighth assignments of

error, during the cross-examination of defendant, the prosecutor inquired about defendant's flight from the crime scene after the murder, as well as defendant's failure to tell police or his family prior to his arrest that he was acting in self-defense when he stabbed G. The prosecutor suggested that those facts belied that defendant had actually acted in self-defense when he stabbed G.

Additionally, during the prosecutor's cross-examination of defendant, the prosecutor inquired about defendant's failure, during a call from jail, to inform his family that he was acting in self-defense when he stabbed G. That call took place after defendant's arrest and after defendant had invoked his *Miranda* rights. In response to that inquiry by the prosecutor, defendant said he could "explain" why he had not told his family why he was acting in self-defense during the call, and then, when the prosecutor said, "do it" defendant testified:

> "These—so they're jail phone calls and they're recorded. And lawyers recommend you don't speak about any of the reasons you're in jail.

> "So I was trying to explain to [my family] that I can't speak to them about the situation right now and please not speak about it. To not ask me anything right now. And I told my mom I can't explain it right now.

> "But generally, yeah, I didn't want to speak about the issue because of the legal matters."

The prosecutor later inquired whether defendant's trial testimony was "the first time that [defendant was] sharing this version of events," *i.e.*, that he was acting in self-defense, "with anyone other than your defense team, so your attorneys and your investigator?" And defendant replied, "yes, because I have a right to listen to my attorneys."

Then, during closing argument, the prosecutor highlighted that defendant "never told *** his family" he was acting in self-defense, that he had shared his self-defense "story" only "with his defense team, not his family members," and that he had "never reported to anyone how he was just defending himself."

As noted, on appeal, in his second through eighth assignments of error, defendant challenges aspects of the prosecutor's cross-examination of defendant and the prosecutor's closing argument.[1] In particular, defendant argues (1) "the trial court erred when it allowed defendant to claim a variety of evidentiary and constitutional privileges in front of the jury," (2) "the prosecutor's questions and argument invited the jury to draw negative inferences against defendant based on his invocation of the attorney-client privilege and his refusal to waive that privilege," (3) "the prosecutor's questions and argument invited the jury to draw negative inferences against defendant based on his invocation of the right to counsel," and (4) "the prosecutor's questions and argument drew negative inferences against defendant based on his invocation of the right against compelled self-incrimination."

As an initial matter, we note that defendant's claims of error are unpreserved. Defendant argues that he preserved the claims of error in his second through fourth assignments via a "*pro se* objection to the prosecutor's line of questioning." But defendant's "*pro se* objection," to the extent it can be characterized as such, was followed by defense counsel stating he had "a matter for the court," a sidebar discussion—the nature of which was not placed on the record—the prosecutor rephrasing the question to which the *pro se* objection was lodged, and no ruling on the record from the trial court in response to the *pro se* objection. Under those

---

[1] Specifically, in his second assignment of error, defendant contends the trial court erred "when it allowed defendant to invoke his attorney-client privilege, his right to counsel, and his right against self-incrimination in front of the jury." In his third assignment of error, defendant contends the trial court erred "when it allowed the prosecutor to elicit evidence about defendant's invocation of his attorney-client privilege." In his fourth assignment of error, defendant contends the trial court erred "when it allowed the prosecutor to elicit evidence of confidential communication between defendant and his attorney." In his fifth assignment of error, defendant contends the trial court erred "when it allowed the prosecutor to comment on defendant's failure to waive his attorney-client privilege." In his sixth assignment of error, defendant contends the trial court erred "when it allowed the prosecutor to comment on defendant's invocation of his right to counsel." In his seventh assignment of error, defendant contends that the trial court erred "when it allowed the prosecutor to comment on defendant's invocation of his right against compelled self-incrimination." And, in his eighth assignment of error, defendant contends that the trial court erred "when it allowed the prosecutor to comment on defendant's failure to offer recorded statements to law enforcement."

circumstances, we conclude defendant's second through fourth assignments of error are unpreserved. *See, e.g., State v. Tyler*, 213 Or App 109, 115, 159 P3d 1218, *rev den*, 343 Or 467 (2007) (issue not preserved where there was "no final ruling for us to review"); *see also State v. Skotland*, 372 Or 319, 329, 549 P3d 534 (2024) ("Sometimes, the winds of preservation can be gauged by looking to the weathervane of trial court surprise: Would the trial court be taken aback to find itself reversed *on this issue, for this reason*?" (Emphasis in original.)).

Further, defendant contends his fifth through eighth assignments of error were preserved via a solitary and unexplained objection he made during closing argument. We disagree that that objection operated to preserve his fifth through eighth assignments of error, because defendant did not put the reasons for his objection on the record or ask to be heard, and given the available context, the reason for the objection would not have been obvious to the trial court. *See State v. Swinney*, 343 Or App 22, 34, 578 P3d 207 (2025) (issue not preserved despite objection because counsel did not elaborate and there was another plausible reason for objection).[2]

Because defendant did not preserve his second through eighth assignments of error, defendant must demonstrate plain error to prevail on appeal—*i.e.*, defendant must demonstrate that the error is "one of law, is obvious and not reasonably in dispute, and appears on the record." *State v. Perez*, 373 Or 591, 604, 568 P3d 940 (2025). Defendant has failed to do so.

As we see it, the merits of defendant's arguments rest on four points that do not pass plain-error muster. First, relying on, among other cases, *State v. Ragland*, 210 Or App 182, 149 P3d 1254 (2006) and *Doyle v. Ohio*, 426 US 610, 96 S Ct 2240, 49 L Ed 2d 91 (1976), defendant argues that "it was not permissible for the prosecutor to negatively comment on defendant's decision" to not explain to his family "his reasons for killing the decedent," because he had

---

[2] That the reason for the objection would not have been obvious to the trial court is perhaps illustrated by defendant's present contention that that objection was sufficient to preserve for appeal *four* distinct assignments of error.

"a constitutional right to avoid speaking about his case to anyone," including "his own family." Defendant's argument fails because, although a defendant who testifies cannot be impeached with his post-*Miranda* silence *vis-à-vis* law enforcement, neither Oregon courts nor the United States Supreme Court has extended that proposition to include *family members* of a defendant. *See United States v. Henry*, 206 Fed Appx 452, 457 (6th Cir 2006) (permissible to impeach defendant's credibility with comment that he had never told "any of *the witnesses* (including his wife and friends)" certain information prior to trial (emphasis in original)); *Donley v. Beard*, No 1:15-CV-01816-DAD-JLT(HC), 2017 WL 1198586, at \*12 (ED Cal Mar 31, 2017) (observing "the Supreme Court has not held that *Doyle* applies to conversations between defendants and private parties, and courts have held that *Doyle* does not" (internal citation omitted))[3]; *see also Ragland*, 210 Or App at 187 (error for prosecutor to "explicitly question[] defendant about why she had not told [*a state trooper*] certain information after she \*\*\* invoked her Fifth Amendment rights").

Second, defendant asserts that the prosecutor was prohibited from drawing attention to defendant's failure to explain to his family on *recorded calls* that he was just defending himself. Specifically, defendant contends that, because calls from jail are recorded, "[t]here is no meaningful difference between making a statement on a recorded jail call and sitting down in an interrogation room and making that same statement directly to the police." But, again, the difficulty with defendant's argument is that it represents an extension of the rule in *Ragland* and *Doyle*, as well as other cases, and, in the absence of controlling case law or a compelling argument from defendant as to why the prosecutor was not permitted to comment on the content of calls that defendant *voluntary made* to his family from jail—including defendant's silence during those calls about his claim of self-defense—we cannot say the error posited by defendant was "obvious and not reasonably in dispute." *Perez*, 373 Or at 607 (stating standard for plain error review); *State v. Dumdei*,

---

[3] We are not bound by the decisions of lower federal courts, but we may consider them as "persuasive authority." *Mears v. Marshall*, 138 Or App 476, 478, 909 P2d 212 (1996).

337 Or App 246, 251, 562 P3d 634, *rev den*, 373 Or 736 (2025) (considering what "we have never held" in determining error was not plain).[4]

Third, and particularly with regard to the prosecutor's cross-examination of defendant, we understand defendant to contend that the trial court was required to *sua sponte* intervene under OEC 513(2) when the prosecutor asked "pointed questions about * * * [defendant's] statements to his defense attorneys." But it does not appear that the prosecutor actually asked defendant "pointed questions about * * * [defendant's] statements to his defense attorneys" as defendant contends, or at least defendant does not point to the location of those "pointed questions" in the record.

Instead, the record reflects that defendant volunteered to provide certain information about why he took certain actions—*i.e.*, stating, "I can explain that" in response to the prosecutor asking whether defendant had failed to tell his family during a call from jail that he was defending himself when he stabbed G—and then defendant did, in fact, explain when the prosecutor inquired as to the explanation. In our view, it was not plain error for the trial court to fail to *sua sponte* intervene in the litigation in that circumstance. *Frease v. Glazer*, 330 Or 364, 370, 4 P3d 56 (2000) (noting that "the attorney-client privilege is not absolute" and "[a] client may waive it voluntarily"); *see also State v. Corkill*, 262 Or App 543, 551, 325 P3d 796, *rev den*, 355 Or 751 (2014) (noting that, "[w]hen, as here, the claimed 'plain error' is associated with a trial court not having *sua sponte* interrupted a line of questioning (or not having excluded the resulting evidence *sua sponte*), the existence of any error does not depend solely on whether—as an abstract matter— the lawyer's questions or the elicited answers would have

_____

[4] We note that some jurisdictions have reached the conclusion that defendant asks us to reach in this case concerning a prosecutor's comments on a defendant's silence during recorded calls, suggesting that defendant presents an interesting novel issue. *See, e.g.*, *People v. Hollinquest*, 190 Cal App 4th 1534, 1557, 119 Cal Rptr 3d 551, 570 (2010), *as modified on denial of reh'g* (Jan 13, 2011) (prosecutor committed *Doyle* violation by referencing defendant's silence during recorded phone calls where the context of those calls were "indicative of [defendant's] exercise of his constitutional rights to silence and counsel"). Nevertheless, defendant did not preserve his claims of error, and, under our case law, the errors are not "obvious."

been inadmissible if they had been objected to," rather, "any 'plain error' must relate to the trial court having not taken affirmative steps to intervene in the parties' litigation").

Fourth, and particularly with regard to the prosecutor's closing argument, defendant contends that the prosecutor "explicitly invited the jury to draw adverse inferences against defendant based on his consultations with his attorney," "invited the jury to draw negative inferences against defendant based on his invocation of the attorney-client privilege and his refusal to waive that privilege," and "invited the jury to draw negative inferences against defendant based on his invocation of the right to counsel." But, having reviewed the prosecutor's closing argument, we conclude that, to the extent that any of the protector's comments during closing argument to which defendant points could have been understood in an impermissible manner, that was not the only manner that the comments could have been understood. And, for that reason, it is not "obvious and beyond reasonable dispute that the prosecutor's comments were improper." *Perez*, 373 Or at 607 (where "there was more than one way that the jury could have understood each of [the prosecutor's] comments, not all of which were impermissible, we cannot conclude that they were plainly improper").

In sum, having reviewed the briefing and record, we conclude defendant has not demonstrated plain error in his second through eighth assignments of error.

Affirmed.